STATE OF MARYLAND, use of EMMA A. VANDERWORKER
vs. GEORGE E. BROWN, WILLIAM H. BOND and
GEORGE LUTZ.

*Wrong by Constable, for which an action on his Official bond
will not lie—Bond of Constable liable only for breach of
Official duty—For a wrong committed not in the discharge
of his Official duty, personally liable—Act of 1870, ch. 84—
Property wrongfully seized under a fi. fa. of a Justice of
the Peace.*

An action cannot be maintained against a constable and his sureties,
on his official bond, for a trespass committed by him in taking the
goods of a stranger on an execution issued against the property of
another person. The remedy in such case is by an action of tres-
pass or trover against the officer personally, and against the plain-
tiff in the execution if he be a party to the trespass.

For any breach of official duty by a constable, his official bond is
responsible; this is the extent of liability assumed by the sureties.
If he commit a wrong, not in the discharge of his official duty, he
is personally liable, but his sureties cannot be held responsible
therefor; it is not within the terms of their contract.

The Act of 1870, ch. 84, affords ample redress to a claimant of prop-
erty wrongfully seized under an execution of a justice of the peace.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON,
MILLER, ROBINSON and IRVING, J.

*John J. Wade,* for the appellant.

The liability of the surety is co-extensive with the lia-
bility of the constable, in respect to all neglect of duty, or

acts which he is required to perform; and, if such acts are performed in an improper manner, so as to work injury, the sureties are liable to the party injured by the official misconduct of the officer. See *Crocker on Sheriff*, secs. 862, 864, 1091, 1092.

The party injured has his choice of remedies—he may sue in trover or trespass, or he may pursue his safer remedy against the officer and his sureties on the official bond. *Freeman on Executions*, secs. 254, 272; *Crocker on Sheriff*, secs. 426, 476.

The wrongful act of the officer in taking the goods of the relator is not a mere private trespass, it is an official act done under the writ, although in the doing of it, he violates its mandate. *Freeman on Executions*, sec. 254; *Crocker on Sheriff*, sec. 864. *See Carmack vs. The Commonwealth*, 5 *Binn.*, 184; *Ohio, &c. vs. Jennings*, 4 *Ohio St. Rep.*, 418; *Harris vs. Hanson*, 11 *Maine*, 241; *Charles vs. Haskins*, 11 *Iowa*, 329; *Stunk vs. Ocheltree*, 11 *Iowa*, 158; *State vs. Farmer*, 21 *Missouri*, 160; *State vs. Moore*, 19 *Missouri*, 369; *Holliman vs. Carroll*, 27 *Texas*, 23; *Van Pelt vs. Littler*, 14 *California*, 194; *Brunott vs. McKee*, 6 *Watts & Serg.*, 513; *Archer vs. Noble*, 3 *Greenleaf,* 418; *Forsythe vs. Ellis*, 4 *J. J. Marsh*, 299; *Dennison vs. Plumb*, 18 *Barb.*, 89; *Jewell vs. Mills*, 3 *Bush.*, (*Ky.*) 64; *Skinner vs. Philips, et al.*, 4 *Mass.*, 69; *Moulton vs. Jose*, 25 *Me.*, 76.

In the State of New York, the Supreme Court in 1843, in the case *Ex parte Reed*, reported in 4 *Hill*, 572, refused a motion made after judgment in trespass against the sheriff, for leave to the relator to prosecute a suit on the bond for taking his goods. Judge COWEN, who delivered the opinion of the Court, admitted that the question was not free from doubt and based his opinion in part on the insufficiency of the affidavits. The Supreme Court of New York, in a similar case, afterwards granted the leave. But in the case of *The People vs. Schuyler*, 4 *Comstock*, 173,

in which the exact question now before this Court came up on a demurrer sustained below, the Court of Appeals after a full review of all the authorities and an elaborate argument of the principles involved, disaffirmed *Ex parte Reed*, and laid down in distinct terms the principles announced by the text writers. This case, although decided by a divided Court—five out of eight Judges concurring—settled finally the question in that State, and became one of the leading cases on this subject.

This question came up for the first time before the Court of Appeals of Virginia in a still more recent case decided in 1866, and reported in 17 *Grattan*, 124. (*Sangster, &c. vs. The Commonwealth.*) Judge MONCURE, who delivered the unanimous opinion of the Court, after an exhaustive review of all the authorities, held that the action on the official bond could be maintained, and that the sheriff, in seizing the goods of a stranger, acted in his character of sheriff: that his act was not a naked trespass without color of authority, and that it is alike consistent with sound policy and legal principles, that he and his sureties on his official bond, should be liable for all damages arising from his wrongful act.

In *Smart vs. Hutton*, 8 *Adol. & Ellis*, 568, which was an action of trespass against the sheriff, for the act of his deputy in arresting a party by virtue of a writ of *fieri facias*, the Court held the sheriff liable in damages for the wrongful act of the deputy, upon the ground that he acted under color of the writ. See also *Glasspoole vs. Young, et al.*, 9 *Barn. & Cress.*, 696–700 ; *Smith vs. Pritchard, et al.*, 8 *Man., Gran. & Scott*, 566, 581, 584, 588, 589.

*Ackworth vs. Kempe*, 1 *Douglas*, 40, is very much like the case at bar, in which Lord MANSFIELD held the high sheriff liable for the act of his deputy in taking the goods of "B," under a *fi. fa.* against "A." In *Gregory vs. Cottrell*, 5 *Ellis & Black.*, 571, JARVIS, Judge, approves *Smart*

State, use of Vanderworker *vs.* Brown, *et al.*

*vs. Hutton,* upon the theory that the High Sheriff set in action the party who committed the wrong.

In the absence of any express adjudication in this State, this Court is asked by the appellees to establish a rule which would deprive our citizens of the only safe remedy against an offending official. The owner, whose rights have been invaded, under color of legal authority, which none dare to resist, and whose property and household goods once in the custody of the officer of the law, are protected from immediate reclamation, is entitled to every remedy known to the law to redress his wrong; and if, by reason of the insolvency of the officer, he finds a personal action against him unavailing, it would be but justice and sound policy to permit the injured party to seek his remedy on the official bond.

*Thomas G. Hayes,* for the appellees.

The official bond of a constable is only responsible for acts done *virtute officii,* but not for acts done *colore officii.* Acts done *virtute officii* are where they are within the authority of the officer, but in doing them he has exercised that authority improperly; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them. *Alcock vs. Andrews,* 2 *Esp.,* 540, *note; State vs. Conover,* 4 *Dutcher,* (*N. J.,*) 236; *State vs. Brown,* 11 *Iredell,* (*N. C.,*) 141, (*Law;*) *Gerber vs. Ackley,* 37 *Wis.,* 44; *Brande on Suretyship, sec.* 484.

Both on authority and principle, the bond in question is only liable for the official acts of the constable, and not for his trespasses; and this principle has its foundation in reason; the seizing of property of a person not named in the writ, is not an official act done by virtue of the office, but unofficial and done by color of the office, for which sureties are not liable. The sureties only undertake to indemnify the public against the official acts of the con-

stable, and not for naked trespasses, which he may commit while acting without legal process. The liability of the sureties cannot be extended beyond the very terms of the condition of the bond; and it is the failure to perform an official act or duty, or the performing it in an improper manner, which comes within the scope of the undertaking of the security.

Although the question involved in this appeal has not been directly decided in Maryland, yet the decisions of this Court upon kindred principles have indicated that Maryland's supreme judicial tribunal favored the rule as laid down by the Court below. *Cromwell vs. Owens*, 7 *H. & J.*, 55; *Richardson vs. Hall*, 21 *Md.*, 404; *Bruce vs. State*, 11 *G. & J.*, 386; *Chappell vs. Cox*, 18 *Md.*, 531; *Horn vs. Mayor, &c., of Balt.*, 30 *Md.*, 222.

BARTOL, C. J., delivered the opinion of the Court.

This is a suit on the official bond of a constable, against him and his sureties. The breach alleged in the *narr.* is that the officer having in his hands a writ of *fieri facias* directing him to levy upon the goods of the defendant named in the writ of execution, did seize and carry away the goods of the equitable plaintiff, well knowing that said goods so seized were the property of the relator.

The demurrer to the declaration was sustained and judgment entered for defendants; the plaintiff has brought this appeal.

Some objection to the *narr.* has been made by the appellees, on the ground of a supposed variance; but this objection in our opinion is not well founded. The only question presented by the appeal is whether an action can be maintained against a constable and his sureties, on his official bond for a trespass committed by him in taking the goods of the equitable plaintiff on an execution issued against the property of another person?

This is a question of considerable interest and importance, and is now for the first time presented directly to

this Court for decision. So far as our experience goes, it is the first time a suit of this kind has been instituted in Maryland, either upon the official bond of a constable or a sheriff, and therefore when the case was opened by the appellant's counsel, we expressed some surprise at what appeared to us to be a novel proceeding. The absence of any reported case in Maryland, in which an action has been maintained on the official bond of a sheriff or constable, for a tortious act, such as that alleged in the *narr.* is strong evidence that according to the general and received opinion of the bench and bar in this State, such an action cannot be maintained. Although there is no express decision to that effect, there are several cases in which this Court has spoken of the remedy for a wrong, such as that here complained of, and has declared that the remedy is by an action of trespass or trover against the officer personally, and against the plaintiff in the execution if he is a party to the trespass. In no instance has it been intimated that a suit for such cause could be maintained upon the official bond, although if such had been supposed to be the law, the Court could scarcely have failed to mention it.

In *Cromwell vs. Owens*, 7 *H. & J.*, 60, it is said " whenever the goods of a stranger are wantonly taken, or after due notice being given, that they are his property, the party injured, if he chooses not to wait and replevy from the purchaser after sale, may always obtain ample redress in exemplary damages, *in an action of trespass or trover*, at the hands of a jury—a tribunal that is always found ready to vindicate the rights of the individual against the lawless oppressor. And in cases of mere mistake, without any intention to do wrong, less than the full value of the goods taken will seldom be recovered."

In *Chappell vs. Fox*, 18 *Md.*, 519, the legal remedy in such case is declared to be, by suit against the officer.

In *Richardson vs. Hall*, 21 *Md.*, 404, the case before the Court was likened to "the case of a sheriff taking the

State, use of Vanderworker *vs.* Brown, *et al.*

goods of one person upon a *fieri facias* issued against another, for which it is well settled, an action may be maintained by the real owner against the sheriff, and the plaintiff in the execution, if he be privy to the wrong."

These citations indicate pretty clearly what has been understood to be the law in Maryland on this subject.

But it is argued by the appellant that in such case an action lies also upon the bond; this depends altogether upon the terms and conditions of the bond.

The mandate of the writ directs the officer to seize the goods of the defendant in the execution;—if under color of the process he seizes the goods of a stranger, it is a *tortious* act, not done in the execution of his legal duty, but in violation of his duty, for the consequences of which his office does not protect him, and as we have seen trespass lies against him. Is it within the condition of the bond or a breach of the condition for which the sureties are liable?

The condition of the bond is, "*that he shall well and faithfully execute the office of constable.*" By this contract, the sureties guarantee the public against official delinquency on the part of the officer. For any breach of official duty his bond is responsible; this is the extent of liability assumed by the sureties. If he commits a wrong, not in the discharge of his official duty, he is personally liable, but his sureties cannot be held responsible therefor, it is not within the terms of their contract.

In *Alcock vs. Andrews,* 2 *Esp.,* 542, (*note,*) Lord KENYON, distinguished between wrongful acts by an officer, done *virtute officii,* and such as are done *colore officii.* The former are "where a man doing an act within the limits of his official authority, exercises that authority improperly, or abuses the discretion placed in him. The latter are where the act committed is of such a nature, that the office gives him no authority to do it; in the doing of that act he is not to be considered as an officer." The act com-

plained of in this case belongs to the latter class, and for that reason, the officer is held liable, and an action lies against him, not in his official character, but as a naked trespasser; for a trespass of this kind, the sureties on the bond cannot be held responsible; as it was said by the Supreme Court of North Carolina, (in *State vs. Brown*, 11 *Iredell*, 144:) " The sureties are here sued upon an express contract, and their liability is confined to it, and cannot be carried beyond its proper and fair meaning; the provision in the sheriff's bond binds the officer affirmatively to the faithful execution of his office—there is no clause to cover an abuse or usurpation of power—no negative words that he will commit no wrong by color of his office, nor do anything not authorized by law."

There the condition of the bond was similar to that here declared on.

In *Ex parte Reed*, 4 *Hill*, 572, the question was ruled in the same way by the Supreme Court of New York. The Court say, to warrant a recovery " on the words of the condition, it is incumbent on the relator to show his demand against the sheriff is for some default in a matter transacted by him in virtue of his office, or for the omission of some act which as sheriff, it was his duty to perform."

In that case, a judgment had been recovered against the sheriff, in trespass for wrongfully seizing the relator's goods under a *fi. fa.*, and a motion was made under the statute for leave to prosecute the official bond, and was refused. The decision was made in 1843, Judge COWEN giving the opinion. In 1850, the question arose in " The *People vs. Schuyler*, 4 *Comstock*, 173, and *Ex parte Reed* was overruled by a divided Court, three Judges dissenting. Upon a careful examination of the case, we think the reasoning in the opinion of the dissenting Judges is more satisfactory than that of the majority. In several of the other States decisions have been made in accordance

with that of *The People vs. Schuyler;* these have been
referred to in the appellant's brief, and cited in argument;
but we do not think they are entitled to be considered
controlling authorities in Maryland.   Many of them are
based upon what is considered public policy; considera-
tions, which in our judgment, can have but little weight
in a case like the present.   As said by Judge PRATT, (4
*Comstock,* 189,) "The liability of the sureties rests in
contract, and the obligation thereby created is not to be
extended beyond its legitimate scope and meaning.   We
are not at liberty to speculate upon reasons of policy,
where the rights of the parties are fixed by contract."

In *State vs. Conover,* 4 *Dutcher,* 28 *N. J.,* 224, the
question before us was fully considered, many of the
decisions in other States were collected and examined,
able opinions were given by the Chief Justice and Judge
HAINES, and the unanimous judgment of the Court was
rendered affirming the views which we·have expressed.

In view of what appears to be the well settled common
law as it exists in Maryland, and the reasons on which it
rests, we think it unnecessary to go into an examination
of the various and conflicting decisions elsewhere, cited
in argument.

With reference to the argument which has been some-
times advanced in favor of holding the official bond
answerable in cases of this kind, because it often happens
that the officer is a person without means, and, therefore,
the injured party is without adequate redress; we have
already said that this consideration does not justify us in
extending the liability of the sureties beyond the terms
of their contract, whatever might be the weight due to
the argument if addressed to the Legislature in inducing
them to prescribe other conditions for the bond.   We may
add that to meet a difficulty of this kind, growing out of
the absence of liability of the sureties on the official bond,
the Legislature has provided an additional remedy by the

Act of 1870, ch. 84, (Rev. Code, page 737,) whereby a claimant of property wrongfully seized under an execution or a judgment of a justice of the peace, may have a speedy trial of the question of title; with a right of appeal to the Court having jurisdiction. This remedy was open to the relator, and would have secured her ample redress.

