STATE, USE OF HILL *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND

[No. 171, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*George B. Woelfel* for appellant.

*Harry E. Clark,* with whom were *Oliver. S. Mullikin* and *Edward D. E. Rollins,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Action was brought by the State of Maryland, to the use of Douglas Hill, against A. Raymond Carroll, Sheriff of Talbot County, and Fidelity and Deposit Company of Maryland, surety on the sheriff's bond, to recover for personal injuries inflicted by the sheriff upon Hill at the county jail in Easton.

The second count, which brought suit against the surety, alleges that Carroll was elected sheriff on November 7, 1950, and on December 7, 1950, executed his bond to the State of Maryland in accordance with the law in the penal sum of $10,000, with Fidelity and Deposit Company of Maryland as surety, with condition that he "Faithfully perform the duties of his office and account for all funds received," and that the bond was approved by a Judge of the Circuit Court on April 13, 1951, and was recorded by the clerk. It then alleges that on December 9, 1950, several police officers of Easton arrested Hill for drunken driving and delivered him to the sheriff as custodian of the county jail, and the sheriff, while having custody of him, unlawfully and maliciously assaulted and beat him without just cause or reason, injuring him severely on the head and body, and then took his revolver and shot him in the face with a tear gas shell, thereby burning and blistering his face and giving him severe conjunctivitis, which will cause him to go totally blind. It finally alleges that the sheriff committed these acts by virtue of his office and that the surety is liable for them.

The case was removed from the Circuit Court for Talbot County to the Circuit Court for Cecil County. In that Court the surety demurred to the second count. The Court sustained the demurrer and entered judgment in favor of the surety. From that judgment plaintiff appealed to the Court of Appeals.

The condition of the bond, which plaintiff claims was breached, is that the sheriff will "faithfully perform the duties of his office." The bond was given in accordance with constitutional and statutory directions. The Constitution of Maryland, Article IV, Section 44, requires that the sheriff in each county and in the City of Baltimore "shall give such bond, exercise such powers and perform such duties as now are or may hereafter be fixed by law." The implementing statute, Laws 1945, ch. 399, Code Supp. 1947, art. 87, secs. 2, 3, directs that the sheriff, before he acts as such, shall give bond to the State of Maryland, with security to be approved by a Judge of the Circuit Court for his county, if he be elected for a county, or by a Judge of the Superior Court of Baltimore City, if he be elected for said city, with condition that he "faithfully perform the duties of his office and account for all funds received under color of his office." The statute further provides that the sheriff shall give a new bond in like manner on or before the first day of December of the second year following his qualification in office; and each such bond shall be recorded by the clerk administering the oath of office and thereafter filed with the State Comptroller.

It was not until 1880 that the question of liability of the surety on the official bond of a sheriff or constable was considered by the Court of Appeals. The case was *State, to Use Vanderworker v. Brown*, 54 Md. 318, 324. Chief Judge Bartol, in delivering the opinion of the Court, went back to the English case of *Alcock v. Andrews*, 1788, 2 Esp. 542, 170 Eng. Reprints 449, wherein Lord Kenyon made the distinction between acts of an officer done *virtute officii* and acts done *colore officii*. Acts *virtute officii* are acts which are within the authority of the

officer, but in doing which he exercises that authority improperly or abuses the confidence the law reposes in him. Acts *colore officii* are those which are of such a nature that the office gives him no authority to do them.

The law is clear in Maryland that, under the condition of a sheriff's bond that he will faithfully perform the duties of his office, the surety guarantees the public against official delinquency on the part of the officer. For any breach of official duty on the part of the officer, the surety on his bond is liable. However, if the officer commits a wrongful act not in the discharge of his official duty, he is personally liable, but his surety cannot be held liable therefor.

The Maryland Court of Appeals recognized the distinction between acts *virtute officii* and acts *colore officii*, holding that if the act is done by the officer by virtue of his office, his surety is liable; but if the act is done only under color of office, the surety is not liable. Thus in *State, to Use of Wilson v. Fowler,* 88 Md. 601, 42 A. 201, 42 L. R. A. 849, the Court held that where an officer executes a writ in a wrongful and oppressive manner, the sureties on his bond are liable in damages to the injured party. But in *State, to Use of German v. Timmons,* 90 Md. 10, 44 A. 1003, the Court held that the sureties on an officer's bond are not liable for the officer's seizure of property when acting under a void distraint warrant, as the act of the officer in such a case is not being done by virtue of his office.

In the American decisions the recognition of this distinction has led to subtle reasoning. The modern tendency of the courts is to ignore the distinction between acts done by virtue of office and acts done under color of office in so far as the liability of the sureties is concerned. These courts explain that the authority of an officer to do a particular act is not the proper criterion of his liability, because in every case the basis of liability is lack of authority, whether exercised with or without process. These courts assert that it is absured to exonerate the surety from liability where the officer goes to

the extreme of acting in an apparently official capacity without process. They emphasize that the distinction between acts *virtute officii* and acts *colore officii* is obscure in meaning and useless in practice, and therefore should be disregarded. It is urged that the decisive test ought to be whether the officer would have acted as he did if he had not been an officer. It is maintained that if the officer acted wrongfully, the sureties should be held liable, because they vouch for his integrity as an officer while acting as such; and they should not be relieved from liability for reasons which, if carried to the logical extreme, would make them liable for legal or authorized acts and absolved from liability for acts beyond his authority, which are the very acts which the sureties are supposed to assure against and which constitute the only logical contingency for entering upon their obligation as sureties. Under the recommended test, the distinctions between acts *virtute officii* and acts *colore officii* would have no practical use. *Lee v. Charmley*, 20 N. D. 570, 129 N. W. 448, 33 L. R. A., N. S., 275; *Geros v. Harries*, 65 Utah 227, 236 P. 220, 225, 39 A. L. R. 1297, 1305; *Lynch v. Burgess*, 40 Wyo. 30, 273 P. 691, 62 A. L. R. 849.

The Maryland Court of Appeals, however, has not abandoned the distinction in the face of glaring examples of misconduct of public officers in the course of their duties. In *State, to Use of Williams v. Dayton*, 101 Md. 598, 61 A. 624, the plaintiff alleged that the constable carried a writ of *fieri facias* to be served upon a storekeeper. Instead of serving the writ in a lawful manner, the constable entered the store rudely, and when a clerk in the store protested and offered to pay the full amount of the judgment against the storekeeper, the constable seized her and twisted and sprained her wrist, and beat and bruised her in a cruel manner. It was held in that case that an officer who, without provocation or necessity, assaults a person not a party to the writ he is serving is personally liable for the tort; but the sureties on his bond are not liable, because the assault is an act

which he has no authority to commit by virtue of his office.

Another striking example of the Maryland rule is the case of *State, to Use of Brooks v. Fidelity & Deposit Co. of Maryland,* 147 Md. 194, 199, 127 A. 758, 760. There the sheriff of Talbot County had arrested a woman without a warrant and kept her in jail for thirty days without a commitment, and maltreated her in an effort to force her to give some information, which she did not have, about another person. The Court held that the surety o nthe sheriff's bond was not liable for these wrongful acts. In affirming the judgment in favor of the surety, Judge Parke said: "These acts were unjustifiable, and in the commission of them the sheriff was neither executing a writ nor was he acting in pursuance of the duties of his office, but in clear and unmistakable violation of its primary and fundamental inhibitions. He is disclosed as a trespasser *vi et armis* from the start, and as such, but not in his official capacity, an action lies against him."

According to the majority of American courts, sureties on the bond of an officer are liable not only for the officer's wrongful acts done *virtute officii,* but also for his wrongful acts done *colore officii.* These courts take the position that the purpose of an official bond is to provide indemnity against malfeasance in public office, the misuse of powers belonging to the office, and the assumption of powers not belonging to it under the guise of official action; and therefore all acts so performed, even though unlawful, are official acts within the meaning of a bond that an officer will faithfully perform the duties of his office, and as such may reasonably be considered to have been within the contemplation of the sureties as constituting a breach of its conditions. *Inhabitants of Greenfield v. Wilson,* 13 Gray, Mass., 384; *People ex rel. Kellogg v. Schuyler,* 4 N. Y. 173; *Archer v. Noble,* 3 Greenl., Me., 418; *Sangster v. Commonwealth,* 17 Grat., Va., 124; *State v. Jennings,* 4 Ohio St. 418; *Norris v. Mersereau,* 74 Mich. 687, 42 N. W. 153; *Charles*

*v. Haskins,* 11 Iowa 329, 77 Am. Dec. 148; *Hall v. Tierney,* 89 Minn. 407, 95 N. W. 219; *Kane v. Union Pacific R. Co.,* 5 Neb. 105; *State v. Fitzpatrick,* 64 Mo. 185; *Lee v. Charmley,* 20 N. D. 570, 129 N. W. 448, 33 L. R. A., N. S., 275; *Van Pelt v. Littler,* 14 Cal. 194; *Lammon v. Feusier,* 111 U. S. 17, 4 S. Ct. 286, 28 L. Ed. 337.

In 1924 the Ohio Supreme Court in *American Guaranty Co. v. McNiece,* 111 Ohio St. 532, 146 N. E. 77, 81, 39 A. L. R. 1289, 1296, said that it could find no logic in the decisions that "distinguish between wrongful acts perpetrated by an officer *colore officii,* who, having a writ, executes it against a person whom the writ does not designate, and wrongful acts perpetrated by an officer, who, *colore officii,* without a writ, commits a wrongful act to the injury of another, for it is the *colore officii* which enables him to commit such an act."

In 1928 the Supreme Court of Michigan held that a surety on a sheriff's bond is liable to all persons unlawfully injured by malfeasance, misfeasance, or nonfeasance perpetrated by the sheriff, and declared that the antiquated fiction between acts *virtute officii* and acts *colore officii* should no longer be regarded. *Kosowsky v. Fidelity & Deposit Co. of Maryland,* 245 Mich. 266, 222 N. W. 153.

In 1934 the Supreme Court of Idaho in *Helgeson v. Powell,* 54 Idaho 667, 34 P. 2d 957, 966, overruled its previous decisions wherein a distinction had been made between acts by virtue of office and acts under color of office, declaring: "We do not believe that a real distinction exists, but we feel that those cases are contrary to the more modern and just rule and great weight of authority; that the rule therein stated prevents justice. Therefore, in so far as they are contrary to the rule herein announced, they are hereby expressly overruled."

We come now to the specific question of the liability of a surety on the official bond of a sheriff for injuries inflicted upon a prisoner by the sheriff while making an arrest, or placing the prisoner in jail, or preventing his escape. There are many decisions that support the rule that the surety is equally liable with the officer in such

cases, regardless of whether the act is done by virtue of office or under color of office. Occasionally a distinction has been made between acts done by virtue of office and acts done under color of office; but most of the courts are inclined to regard the distinction as being of very little importance. *American Guaranty Co. v. McNiece,* 111 Ohio St. 532, 146 N. E. 77, 39 A. L. R. 1289; *Geros v. Harries,* 65 Utah 227, 236 P. 220, 39 A. L. R. 1297.

In *Wieters v. May,* 71 S. C. 9, 50 S. E. 547, the plaintiff alleged that the defendant, a State constable, entered his store and, while attempting to enforce the State dispensary law, violently assaulted him and threatened to shoot and kill him, and struck him with his pistol and club, cutting open his face and head and injuring him internally. The Court there held that where an officer, while attempting to execute some official duty, exceeds or abuses his authority, the surety is liable on the officer's bond.

In *Shields v. Pflanz,* 101 Ky. 407, 41 S. W. 267, the Court held that malicious and excessive exercise of an officer's authority in executing a writ is an act for which he is liable in his official capacity to the person injured.

In *Carlisle v. Village of Silver Creek,* 85 Miss. 380, 37 So. 1015, an action on the official bond of a village marshall, the Court held that while an officer may make an arrest without a warrant for an offense committed in his presence, the surety on his bond is liable for damages resulting from a brutal and wanton assault committed by the officer while making an arrest. In passing on the merits of the case, the Court said: "Officers are charged with the duty of enforcing the law, and given the authority of arresting without warrant all those committing offenses in their presence, and in effecting such arrests may use such force as may be necessary to overcome resistance. But in this case * * * the officer far exceeded the authority vested in him, and became himself a violator of the law."

It is a general rule that the extent of the liability of a surety on the official bond of a sheriff or constable is

ascertained from the terms of the bond, strictly construed so as not to extend the liability by implication beyond its terms. While the surety on a peace officer's bond should not be held liable beyond the plain scope of the undertaking, nevertheless the bond should not be unreasonably construed so as to defeat the purpose of the statute in requiring sureties for the protection of the public against official misconduct. Generally speaking, the question whether the surety on an officer's bond is liable for personal injuries due to the wrongful manner in which the officer performs his duties depends upon the provisions of the bond and whether the act was committed by the officer in the performance of his official duty. *State v. Dean,* 98 W. Va. 88, 126 S. E. 411; *Geros v. Harries,* 65 Utah 227, 236 P. 220, 224, 39 A. L. R. 1297, 1304.

Under our decisions, which it is not necessary for us to overrule, the surety on a sheriff's bond is liable where the sheriff, in the discharge of the duties of his office, brutally assaults a person without provocation or necessity. It follows that the surety can be held liable where the sheriff, in overcoming a man's resistance to the performance of his duty, so far exceeds the necessities of the occasion as to become a malicious aggressor and to injure the man seriously.

In the case at bar the second count of the declaration alleges that Easton policemen had arrested Hill and delivered him to the sheriff's custody, and that the sheriff committed the wrongful acts "by virtue of his office." The surety, seeking to uphold the decision of the Court below, claims that this allegation is merely a conclusion of the pleader.

In an action against the surety, it is necessary to allege and prove that the sheriff was required to take some official action under the circumstances, that the injuries complained of were inflicted by the sheriff while he was attempting to take such action, and that they were the result of official misconduct. Plaintiff's counsel stated at the argument in this Court that the facts in this

case come within the requirements of the law and asked for opportunity to amend. We will therefore affirm the judgment rendered in favor of the surety, but remand the case to the Court below to give plaintiff the opportunity to amend the second count by specifically alleging how the sheriff breached an official duty at the time of the assault.

*Judgment affirmed, with costs, and case remanded with leave to plaintiff to amend.*